UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
BRYSON CITY DIVISION
DOCKET NO. 2:12-CV-00013-FDW

| | |
|---|---|
| JOHNNIE MARISSA CLONTZ, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> vs. ) <br> ) <br> MICHAEL J. ASTRUE, ) <br> **Commissioner of Social Security,** ) <br> ) <br> **Defendant.** ) <br> ) | **ORDER** |

**THIS MATTER** comes now before the Court upon Plaintiff Johnnie Marissa Clontz's ("Plaintiff's") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, (Doc. No. 8) filed on September 10, 2012, and Defendant Commissioner of Social Security Michael J. Astrue's Motion for Summary Judgment, (Doc. No. 12) filed on December 10, 2012. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits.

Having reviewed and considered the written arguments, administrative record, and applicable authority, for the reasons set forth below, Plaintiff's Motion for Summary Judgment is DENIED. Defendant's Motion for Summary Judgment is GRANTED and, accordingly, the Administrative Law Judge's ("ALJ") decision is AFFIRMED.

## I. BACKGROUND

In April 2002, Mark Lawrence, M.D., a psychiatrist with Smoky Mountain Counseling Center, first treated Plaintiff for depression. Her problems with depression stem from childhood sexual abuse, an abusive marriage, and the discovery that her three-year old child had been molested. (Doc. No. 9). In 2002, Dr. Lawrence subsequently diagnosed Plaintiff with "Major

Depressive Disorder: Recurrent, Moderate," and for "Personality Disorder: NOS (not otherwise specified), with Histrionic Traits." (Doc. No. 9). On March 26, 2008, Dr. Lawrence evaluated Plaintiff again for a panic disorder and depression. (Doc. No. 9). In September 2008, Dr. Lawrence reported that he believed that Plaintiff may have an atypical bipolar disorder. (Doc. No. 9).

In September 2008, Plaintiff was referred to a rheumatologist, Najeeb Ghaussy, M.D., for bilateral arm and wrist pain. (Doc. No. 9). Dr. Ghaussy began treating Plaintiff on November 20, 2008, and, after examination, Dr. Ghaussy found that Plaintiff exhibited enough symptoms to suggest fibromyalgia. (Doc. No. 9).[1] Terence McGhee, M.D., with Carolina Hand Surgery Associates, began treating Plaintiff for bilateral hand numbness on October 3, 2008. (Doc. No. 9). Christopher Lechner, M.D., one of Dr. McGhee's associates at Carolina Hand Surgery Associates, concluded that Plaintiff had bilateral carpal tunnel syndrome. (Doc. No. 9).

In an office note dated August 13, 2010, Plaintiff's physician[2] at Tallulah Health Center documented that Plaintiff had worsening bilateral knee pain and mild osteoarthritis. (Doc No. 9). Mental health records from Appalachian Community Services, dated October 26, 2011, document that Plaintiff's affect is restricted with an assessment of "Bipolar Disorder: NOS (not otherwise specified)." (Doc. No. 9).

Furthermore, Plaintiff has an ongoing obesity problem. (Doc. No. 9). Near the time of Plaintiff's alleged disability onset date of May 1, 2008, she weighed 283 pounds with a calculated Body Mass Index ("BMI") of 47.1. (Doc. No. 9).[3] By 2011, Plaintiff weighed 322

---

[1] In August 2010, Dr. Ghaussy completed a Fibromyalgia Residual Functional Capacity Questionnaire. As a result, Dr. Ghaussy concluded that Plaintiff met the American College of Rheumatology criteria for fibromyalgia. (Doc. No. 9).

[2] This physician is not named in the record.

[3] Plaintiff's height for the BMI calculation is 5 feet and 5 inches tall. (Doc. No. 9).

pounds with a calculated BMI of 53.6. (Doc. No. 9).

## II. PROCEDURAL HISTORY

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on June 2, 2009 alleging a disability onset date of May 1, 2008. (Doc. No. 6-11). The claim was initially denied on August 20, 2009, and again upon reconsideration on March 30, 2010. (Doc. No. 6-11). Subsequently, on April 14, 2010, Plaintiff filed a written request for an administrative hearing and Administrative Law Judge Harold Chambers held a video hearing on November 17, 2010. (Doc. No. 6-11). On February 24, 2011, the ALJ issued a decision finding that Plaintiff was not disabled, and the Appeals Council denied Plaintiff's request for review on March 2, 2012. (Doc. No. 9). Thus, the ALJ's decision of February 2011 became the final decision of the Commissioner.

Plaintiff timely filed this action on May 4, 2012, and the parties' motions are now ripe for review pursuant to 42 U.S.C. § 405(g).

## III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g), limits this Court's review of a final decision of the Commissioner to whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, this Court "'must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard.'" Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001)). This Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.

1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the Commissioner's final decision. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION OF CLAIMS

The question before the ALJ was whether Plaintiff was "disabled," as defined for Social Security purposes, between May 1, 2008, and the date of last insured, December 31, 2010.[4] On February 24, 2011, the ALJ found that Plaintiff was not "disabled" at any time between May 1, 2008, and the date of last insured. (Doc. No. 6-11). The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. C.F.R. § 404.1520(a). The five steps are:

---

[4] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

4

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of The Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of her past relevant work; and

(5) Whether the claimant is able to do any other work, considering her RFC, age, education, and work experience.

(Doc. No. 13) (citing 20 C.F.R. §§ 404.1520(a)(4)(i-v)). In this situation, the ALJ determined that Plaintiff was not disabled under the fifth step in the above evaluation process. (Doc. No. 6-11). Particularly, the ALJ concluded that "considering the [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [Plaintiff] could have performed." (Doc. No. 6-11).

On appeal, Plaintiff makes the following assignments of error: (1) that the ALJ failed to provide an adequate RFC determination; (2) that the ALJ failed to resolve conflicts between the vocational expert's ("VE's") testimony and the Dictionary of Occupational Titles ("DOT"); and (3) that the ALJ failed to fulfill his duty to develop the record by failing to accord proper weight to the opinions of Plaintiff's treating physicians. (Doc. No. 9).

**A. <u>There is substantial evidence to support the ALJ's RFC determination.</u>**

The ALJ found:

the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). I specifically find that the claimant has the sedentary work capacity of lifting up to fifteen pounds occasionally and lifting for carrying up ten pounds frequently, sitting for six of eight hours, and walking or

5

standing for two of eight hours, with normal breaks. She requires a sit-stand option (defined as follows: she is allowed to sit or stand consistent with the described exertional requirements; she will not be off task more than five percent of the work period; she cannot leave the workstation; she can sit up to thirty-minute time segments in any one time; and she can stand or walk in one to ten minute time segments to relieve sitting. Additional standing or walking will be performed throughout the remainder of the workday, consistent with the above requirements). The claimant is limited to occasional pushing or pulling with the bilateral upper and lower (foot controls) extremities. The claimant cannot climb ladders, ropes, or scaffolds. The claimant can occasionally climb stairs, balance, kneel, crawl, and stoop. The claimant cannot crouch. There can be no repetitive extension, flexion, or rotation of the neck or trunk, except as consistent with the exertional requirements described. The claimant is limited to frequent gross manipulation and handling of objects bilaterally, and such handling cannot be repetitive or continuous. The claimant is limited to frequent but no repetitive or continuous fingering bilaterally, defined as fine manipulation of objects no smaller than a paperclip. The claimant must avoid even moderate exposure to extreme cold, wetness, humidity, and excessive vibration. The claimant must avoid even moderate exposure to hazards, such as the use of moving machinery or exposure to unprotected heights. The claimant is limited to simple, routine, and repetitive tasks, performed in a work environment free of fast-paced production environments, involving only simple, work-related decisions, and with few, if any, workplace changes; and to only occasional interaction with the public.

(Doc. No. 6-11). Plaintiff contends that the ALJ's RFC finding was inadequate because the finding eroded the unskilled sedentary occupational options available to her. (Doc. No. 9). She argues that the RFC limitation of a sit/stand option is inconsistent with the definition of sedentary work, and also that the RFC manipulative limitation of her ability to handle and work with objects bilaterally is inconsistent with most of the unskilled sedentary jobs. (Doc. No. 9).

While the evidence as a whole supports broad limitations due to Plaintiff's impairments, the evidence does not support Plaintiff's claims that the ALJ's RFC finding, limiting her to sedentary work, is inadequate. An initial evaluation by the Plaintiff's fibromyalgia provider for joint pain showed normal range of motion of the neck, back, hips, knees, ankles, and wrists. (Doc. No. 6-11). A January 2009 follow-up for her joint pain again revealed normal range of motion of the shoulders, and no synovitis of the elbows, wrists, hands, or ankles. (Doc. No. 6-

11). Plaintiff also reported to her fibromyalgia provider that her back pain was tolerable and only required use of pain medication sparingly. (Doc. No. 6-11). Furthermore, Plaintiff's November 2008 X-rays of her knees showed only mild medial joint space narrowing, and the July 2010 X-rays of her knees showed similar findings. X-rays of both her right and left hands were unremarkable as well. (Doc. No. 6-11).

In regards to Plaintiff's claims of the RFC limitations on handling objects bilaterally, the initial evaluation for the Plaintiff's joint pain showed a normal range of motion of her wrists. (Doc. No. 6-11). Additionally, a biopsy of the Plaintiff's right wrist noted only mild chronic inflammation, and postoperative observation of her right wrist indicated that recovery was progressing well, with her right wrist returning to its full range of motion despite some hypertrophy, and that her wrist numbness was disappearing. (Doc. No. 6-11). Postoperative observation of Plaintiff's left wrist noted that her left wrist was doing "beautifully," with returned sensation, normal functioning, and full flexion and extension. (Doc. No. 6-11). This substantial medical evidence all supports the ALJ's RFC parameters allowing Plaintiff to engage in frequent gross manipulation and handling of objects bilaterally, but prohibiting repetitive or continuous actions of this sort.

In regards to the sit/stand restriction imposed by the ALJ, the ALJ provided this restriction based on Plaintiff's own testimony that her pain requires her to stand up after thirty minutes of sitting. (Doc. No. 6-11). The ALJ further based this decision on Plaintiff's own fibromyalgia provider's opinion finding that Plaintiff required a sit/stand option. (Doc. No. 6-11). Again, it's clear that the ALJ had substantial evidence to provide such a sit/stand option in his RFC determination.

Further, the Plaintiff argues that the RFC finding is inadequate because combining a sedentary work restriction with the sit/stand option or the manipulative restrictions erodes her occupational base to the point of disability. (Doc. No. 9). While the question of whether a significant number of jobs exist in the national economy that Plaintiff is capable of performing, despite these limitations, is an issue to be discussed in Section II, the VE testified that, despite the limitations, there was work in the national economy that Plaintiff could still perform. (Doc. No. 6-11). This provides additional substantial evidence that supports the ALJ's findings.

Additionally, pairing a sedentary work restriction with either a sit/stand option or a manipulative limitation does not per se render a plaintiff disabled. See Taylor v. Astrue, 5:10-cv-00512, 2011 WL 6934577, at *7-8 (E.D.N.C. Nov. 7, 2011) (holding that the ALJ made a proper RFC determination when the ALJ paired a sedentary work restriction with a limitation of no more than frequent manipulation); see also Fields v. Astrue, 5:10-cv-463, 2011 WL 6019902, at *12 (E.D.N.C. Nov. 3, 2011) (finding that the ALJ did not err in an RFC finding that limited plaintiff to a sedentary work restriction, but provided a sit/stand option while restricting plaintiff to sitting, standing, or walking for only 30 minutes at a time).

**B. The ALJ did not fail to reconcile conflicts between the VE's testimony and the DOT.**

At the hearing on November 17, 2010, the VE testified that someone with Plaintiff's vocational profile and the limitations included in the RFC could perform the following jobs: surveillance system monitor (DOT 379.397-010) with 2,320 jobs in North Carolina, information clerk (DOT 237.367-018) with 33,050 jobs in North Carolina, and order clerk in the food and beverage industry (DOT 209.567-014) with 5,206 jobs in North Carolina. Plaintiff argues that the ALJ's decision is flawed because (1) it did not resolve conflicts between the VE's testimony that someone limited to performing only simple routine tasks could perform jobs requiring the

8

DOT's General Educational Development ("GED") reasoning level of 3 and the actual parameters of the DOT,[5] and (2) the ALJ erroneously found that Plaintiff could perform the job of an information clerk despite that position requiring a higher exertion level of light exertion. (Doc. No. 9).

   i.  **The VE's testimony that Plaintiff can perform certain jobs requiring a DOT reasoning level of 3 is consistent with DOT criteria and Plaintiff's RFC limitation to simple, unskilled work.**

While Plaintiff correctly points out that the jobs of surveillance system monitor and order clerk in the food and beverage industry require a reasoning level of 3, there still is no conflict between the VE's testimony that Plaintiff can perform these level 3 jobs and the DOT's designation of reasoning levels to these jobs. This is because "[t]he requirements of GED reasoning level three are consistent with a limitation to simple, unskilled work." Thacker v. Astrue, No. 11-246, 2011 WL 7154218, at *4 (W.D.N.C. Nov. 28, 2011); Williams v. Astrue, No. 3:11-cv-592, 2012 WL 4756066, at *4-5 (W.D.N.C. Aug. 27, 2012).[6] While Plaintiff cites to several cases in which other courts have found a discrepancy between an RFC limiting the person to simple, unskilled, repetitive work and a job with a DOT classification of a reasoning

---

[5] Level 6: Apply principles of logical or scientific thinking to a wide range of intellectual and practical problems. Deal with nonverbal symbolism (formulas, scientific equations, graphs, musical notes, etc.) in its most difficult phases. Deal with a variety of abstract and concrete variables. Apprehend the most abstruse classes of concepts. Level 5: Apply principles of logical or scientific thinking to define problems, collect data, establish facts, and draw valid conclusions. Interpret an extensive variety of technical reasoning. Level 4: Apply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists. Interpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form. Level 3: Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations. Level 2: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations. Level 1: Apply commonsense understanding to carry out simple one or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job. DOT at 1010-1011.

[6] The Western District of North Carolina's recent holdings on this issue brings it in line with recent decisions from courts within the Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits. Williams, 2012 WL 4756066 at *4-5; see e.g., Cottman v. Astrue, No. BPG-08-1753, 2009 WL 4884506, at *6 n.5 (D. Md. Dec. 9, 2009) ("The ALJ's determination that plaintiff could only perform simple tasks, however, is not necessarily inconsistent with a finding that plaintiff can perform the job of surveillance systems monitor"); Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009).

level 3, these cases pre-date the more recent case law from cases within the various circuits around the country, and from case law in this district. (Doc. No. 9). The ALJ's decision that Plaintiff could perform the jobs of surveillance system monitor and order clerk is supported by both the VE's testimony and the recent case law clearly establishing that a reasoning level of 3 is consistent with a limitation to simple, unskilled work. As the Court finds that there is no inconsistency to resolve, the ALJ made no error in this regard.

    ii.    **The ALJ's finding that Plaintiff could perform the job of information clerk was a harmless error and is not basis for remand.**

The ALJ did err[7] in finding that Plaintiff could perform the work of information clerk because the position of information clerk requires a reasoning level of 4 and a "light," rather than "sedentary" exertional capacity. (Doc. No. 13). This error, however, is not a reason for remand because it is merely a harmless error and the Plaintiff has not articulated how she was harmed or prejudiced by the error. See Shinseki v. Sanders, 129 S. Ct. 1696, 1706 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Remand is only appropriate if the ALJ would realistically reach a different conclusion or decision upon remand. Dover v. Astrue, No. 1:11-cv-120, 2012 WL 1416410, *5 (W.D.N.C. Mar. 19, 2012) (finding that "even assuming that the ALJ did err, such error by the ALJ was harmless because remand would not lead to a different result.").

Pursuant to the VE's testimony discussed previously, even removing the position of information clerk from the equation, Plaintiff could perform the jobs of surveillance system monitor and order clerk− constituting 7,526 jobs in North Carolina. Plaintiff thus still could perform a significant number of jobs in the region, despite the error of initially including the position of information clerk in the determination. See Hicks v. Califano, 600 F.2d 1048, 1051

---

[7] Defendant Commissioner of Social Security concedes that the ALJ erred in finding that Plaintiff could perform the work of information clerk. (Doc. No. 13).

(4th Cir. 1979) (holding that three occupations with 100 positions in the region constitutes a significant number). Therefore, because there still are a significant number of jobs that the Plaintiff can perform, the decision of the ALJ would remain the same upon remand, rendering the Plaintiff neither harmed nor prejudiced.

    **C. The ALJ fulfilled his duty to develop the record and properly assessed the opinions of the treating physicians.**

The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of an alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. § 404.1527(d)(2) (2002); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

The ALJ gave some weight to the opinion of Plaintiff's fibromyalgia treating physician, Dr. Ghaussy. Dr. Ghaussy opined that Plaintiff could perform sedentary work with a need for a sit/stand option, would experience pain severe enough to interfere with her attention and concentration, required frequent work absences, and had postural limitations. (Doc. No. 9). The ALJ, taking this into consideration, found that Plaintiff could only perform sedentary work and required a sit/stand option, yet properly rejected Dr. Ghaussy's opinions on Plaintiff's poor attention and concentration because the record is devoid of any evidence that Plaintiff has poor attention or concentration. (Doc. No. 6-11). In fact, there were several evaluations in the record in which Plaintiff's affect, attention, and concentration were all normal and appeared focused

and thus the record does not support a constant finding of poor attention or concentration. (Doc. No. 6-11). Further, the ALJ properly rejected Dr. Ghaussy's opinions regarding Plaintiff's needs for greater postural limitations because, despite Dr. Ghaussy's notes and observations, X-rays of the Plaintiff's knees, right shoulder, right elbow, and hands only showed mild to negative findings. (Doc. No. 6-11). Thus, because much of Dr. Ghaussy's opinion was not well-supported and is inconsistent with other substantial evidence on the record, the ALJ did not err in giving Dr. Ghaussy's opinion only some weight, and not controlling weight.

Similarly, the ALJ properly only gave some weight to the opinion of Dr. Lawrence, Plaintiff's treating psychiatrist. Plaintiff argues that the ALJ did not properly consider Dr. Lawrence's opinion that Plaintiff would miss more than four days of work per month due to her mental impairments. (Doc. No. 9). Again, Dr. Lawrence's opinions were that Plaintiff had greater mental limitations than the record supports. The record provides that Plaintiff had reported good mood stability on Lamictal medication and experienced fewer panic attacks with Xanax medication. Further, mental status exams indicated that Plaintiff had normal thought content, good eye contact, and was functioning well enough to express a desire to get a job or go back to school. (Doc. No. 6-11). Again, because of inconsistent evidence on the record, some of which did not support Dr. Lawrence's medical opinions, the ALJ properly afforded only some weight to Dr. Lawrence's opinion.

Plaintiff also argues that the ALJ erred in not evaluating every factor set forth in 20 C.F.R. § 404.1527(c)(2), which are used to evaluate any medical opinion.[8] (Doc. No. 9). Although the regulations do require the ALJ to consider these factors in determining what weight

---

[8] The factors to consider are: the length of treatment and frequency of examination, the nature and extent of the treatment relationship, the amount of relevant evidence the medical source has in support of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating physician. 20 C.F.R. §§ 404.1527(c)(2)(1-5).

to allot to medical opinions, the ALJ does not have to specifically discuss each one. In Henley v. Astrue, this Court held that when an ALJ finds that a treating physician's opinion is not supported by the record, such a decision "implicitly ruled that the opinion failed each of the [1527(c)(2)] factors." No. 3:11-cv-488, 2012 WL 2804846, at *4 (W.D.N.C. Jul. 10, 2012) (finding that despite the ALJ failing to explicitly discuss the 20 C.F.R. § 404.1527(c)(2) factors, the ALJ implicitly ruled that the treating physician opinion failed the factors by finding that the opinion contradicted substantial evidence). Thus, by the ALJ here finding that Dr. Ghaussy and Dr. Lawrence's opinions were not supported by the record, the ALJ implicitly ruled that their opinions failed the C.F.R. § 404.1527(c)(2) factors.

Lastly, Plaintiff contends that the ALJ failed to develop the record fully by not referring Plaintiff for a pre-hearing or post-hearing consultative examination. (Doc. No. 9). Plaintiff argues that because the ALJ gave only some weight to her treating physicians and to the state agency's non-examining physicians' mental assessments, that the ALJ should have referred her for a consultative examination. (Doc. No. 9). Despite Plaintiff's arguments, the ALJ has discretion in deciding whether or not to order a consultative examination. See C.F.R. § 404.1519. "[A] consultative examination is required when the evidence as a whole is insufficient to support a decision." Bishop v. Barnhart, 78 Fed. App'x 265, 268 (4th Cir. 2003). In this situation, there was substantial evidence on the record to support the ALJ's decision, therefore negating the need for a consultative examination. See Cosom v. Astrue, No. 11-cv-294, 2012 WL 1898921, at *7 (W.D.N.C. Feb. 23. 2012) (finding that "there was no need to arrange for a consultative examination because the ALJ had all the information he needed to reach a decision.").

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, (Doc. No. 8) is DENIED, the Defendant's Motion for Summary Judgment, (Doc. No. 12) is GRANTED, and the ALJ's decision is AFFIRMED. The Clerk's Office is directed to CLOSE THE CASE.

IT IS SO ORDERED.

Signed: July 29, 2013

Frank D. Whitney
Chief United States District Judge